IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RYAN ELLIOT FEHDERAU, | ) | 8:18CV588 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| FIRST NATIONAL OF NEBRASKA, | ) | |
| INC., d/b/a FIRST NATIONAL BANK | ) | |
| OF OMAHA, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Ryan Elliot Fehderau, filed this case on December 21, 2018, and was granted leave to proceed in forma pauperis on December 31, 2018.[1] The court now conducts an initial review of Plaintiff's Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

I. SUMMARY OF COMPLAINT

Plaintiff claims his former employer, Defendant, First National of Nebraska, Inc., violated the Americans with Disabilities Act ("ADA"), and he seeks to recover damages. Plaintiff's alleged disabling impairment is autism spectrum disorder. His standard form "Complaint for Employment Discrimination" contains a section entitled "Statement of Claim" with checkboxes listing various discriminatory acts. Plaintiff has checked the boxes for "termination of my employment," "failure to promote me," "failure to accommodate my disability," "unequal terms and conditions of my employment," and "retaliation." (Filing 1, p. 4) No supporting facts are alleged in the Complaint, but Plaintiff has attached a charge of discrimination he filed jointly with the Nebraska Equal Opportunity Commission ("NEOC")

---

[1] The court denied Plaintiff's Motion for Exemption from Payment of PACER User Fee to the extent Plaintiff was seeking an exemption beyond the automatic exemption he receives as a case participant. Plaintiff filed an interlocutory appeal from this order. The appeal was dismissed by the United States Court of Appeals for the Eighth Circuit for failure to prosecute, and that Court's mandate was issued on March 18, 2019.

and the federal Equal Employment Opportunity Commission ("EEOC") on November 21, 2018, which sets out the following particulars:

> I was hired on or about July 10, 2017 as a Network Services Administrator.
>
> From the beginning of my employment, I was denied tools and access to programs that would help me complete my job duties. I received access in the spring of 2018. My coworkers were given those tools and access to the programs within weeks of their hire dates.
>
> I experienced harassment from my coworkers by overhearing them talk about my medical conditions.
>
> In or about May 2018, I informed my supervisor of my medical conditions and harassment I was receiving because of my medical conditions. I asked my supervisor if he wanted me to email him with a list of my medical conditions, and he replied he didn't want that in writing. Regardless, my supervisor documented my medical conditions during that meeting. The harassment stopped for a few weeks but started again shortly after.
>
> Starting on or about September 14, 2018, I was not able to work because of my medical conditions. My medical conditions restricted my ability to contact the company about my absences. On or about September 18, 2018, I was admitted to the hospital. On or about September 21, 2018, my sister-in-law spoke with my supervisor and informed him that I was not at work because of a medical condition and that I was in the hospital. On or about September 25, 2018, I was released from the hospital and found an email stating I had been discharged on September 24, 2018. I contacted my supervisor on or about September 26, 2018, and he confirmed that I had been discharged on or about September 27, 2018, Human Resources sent an email stating I had been discharged for missing seven days of work without notification.
>
> Human Resources has continued to mock me in writing because of my medical condition.
>
> I believe I was denied equal terms and conditions, harassed, and discharged because of my disability, record of disability, and/or being regarded as disabled in violation of the Americans with Disabilities Act of 1990, as amended.

(Filing 1, pp. 10-11)

Also attached to the Complaint is a right-to-sue letter that the EEOC issued on November 29, 2018. (Filing 1, p. 6)

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

Title I of the ADA prohibits a covered entity from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations" of an employee, unless the employer can "demonstrate that the

accommodation would impose an undue hardship on the operation of the business." *Sharbono v. N. States Power Co.*, 902 F.3d 891, 894 (8th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)).

"Disability" under the ADA means that the individual (a) has a physical or mental impairment that substantially limits one or more major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(2). "An individual may establish coverage under any one or more of these three prongs of the definition of disability ...." 29 C.F.R. § 1630.2(g)(2).

"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C.A. § 12102(2)(B).

"The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(2).

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.A. § 12102(3).

A. Disability Discrimination

To establish a prima facie case of disability discrimination, a plaintiff must show that he (1) has a "disability" within the meaning of the ADA, (2) is a "qualified individual" under the ADA, and (3) suffered an "adverse employment action" as a result of the disability. *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018).

Although no facts are alleged in the Complaint to show that Plaintiff's autism spectrum disorder is a "disability," Plaintiff stated in the charge of discrimination he filed with the EEOC that he has a "disability, record of disability, and/or [was] regarded as disabled in violation of the [ADA]." This is sufficient under federal pleading practice. *See Trimble v. BNSF Ry. Co.*, No. 4:08CV3116, 2008 WL 2795863, at *3 (D. Neb. July 17, 2008) (denying defendant's motion for judgment on the pleadings based on ADA plaintiff's failure to allege what physical or mental impairment defendant regarded him as possessing and which major life activities were substantially limited); *EEOC v. Northwest Airlines, Inc.*, 216 F.Supp.2d 935, 939 (D. Minn. 2002) (noting that four circuit courts have ruled that an ADA plaintiff, at the pleading stage, is not required to explicitly assert a substantially limited major life activity). *See also Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364-65 (8th Cir. 2003) (citing *Northwest Airlines* with approval).

However, Plaintiff has not sufficiently alleged that he is a "qualified individual." To be a "qualified individual" within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation. *Denson*, 910 F.3d at 370. While it might reasonably be inferred that Plaintiff has the requisite skill, education, experience, and training for the Network Services Administrator position since he apparently held the position from July 10, 2017, until September 27, 2018, there are no facts to show that he could perform the essential functions of the position.[2]

---

[2] To the contrary, Plaintiff states in the charge of discrimination he filed with the EEOC that he was discharged for missing 7 days of work without notification, and that his medical conditions restricted his ability to contact Defendant about his absences. Regular and reliable attendance at work has been recognized as an essential function of most jobs. *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998); *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999); *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th

An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016) Examples include "[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Id.* (quoting *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008). Plaintiff's statement in the charge of discrimination that he was discharged because of his disability satisfies the third element of his prima facie case, but his checkmark allegation that Defendant "fail[ed] to promote me" is not sufficient.

There are no facts alleged in the Complaint to support a failure-to-promote claim. In addition, the charge of discrimination filed with the EEOC did not include such a claim. The ADA requires a plaintiff to file a complaint with the EEOC before filing a suit in federal court. *Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 623 (8th Cir. 2019). Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC. *Id.* Plaintiff's failure to exhaust his administrative remedies precludes him from now claiming that Defendant failed to promote him because of his disability. *See Malone v. Ameren UE*, 646 F.3d 512, 516 (8th Cir. 2011) (affirming dismissal of failure-to-promote claim that was not alleged in the charge of discrimination filed with the EEOC). "While a charge of discrimination 'need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.'" *Id.* (quoting *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009)).

Similarly, Plaintiff claims Defendant failed to accommodate his disability, but this claim was not included in the charge of discrimination he filed with the EEOC. As a result, he failed to exhaust his administrative remedies on that claim, and he cannot pursue it in federal court. *See Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 608 (8th Cir. 2018) (affirming dismissal of failure-to-promote claim where plaintiff did not include any allegation about needing or requesting an accommodation in charge of discrimination he filed with the EEOC).

---

Cir. 2008); *see Higgins v. Union Pac. R.R. Co.*, 303 F. Supp. 3d 945, 958 (D. Neb. 2018).

Plaintiff also complains of "unequal terms and conditions" of employment. Plaintiff did assert in his charge of discrimination that, unlike his co-workers, he was "denied tools and access to programs that would help [him] complete [his] job duties," but there are not enough facts stated from which to conclude that this was an adverse employment action. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

Finally, Plaintiff alleged in the charge of discrimination he filed with the EEOC that he "experienced harassment from [his] coworkers by overhearing them talk about [his] medical conditions," and that "Human Resources has continued to mock [him] in writing because of [his] medical condition." The Eighth Circuit has held that hostile work environment claims are actionable under the ADA. *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719 (8th Cir. 2003). To prevail on a hostile work environment claim under the ADA, Plaintiff must show "that he is a member of the class of people protected by the statute, that he was subject to unwelcome harassment, that the harassment resulted from his membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (quoting *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003)). When the alleged harasser is the plaintiff's fellow employee there is a fifth element: that the employer knew or should have known of the harassment and failed to take proper action. *Id.* (citing *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000)). This element does not apply to allegations of supervisory harassment. *Id.*

Plaintiff's allegations fail to show that the harassment was severe enough to affect the terms, conditions, or privileges of his employment. The Eighth Circuit has "repeatedly emphasized that anti-discrimination laws do not create a general civility code." *Id.* (quoting *Shaver*, 350 F.3d at 721). A hostile work environment must be both subjectively and objectively offensive, as well as "extreme in nature and not merely rude or unpleasant." *Id.* (quoting *Sutherland v. Mo. Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009)). "In determining whether a plaintiff has demonstrated a hostile work environment, we consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance." *Id.* (quoting *Cross v. Prairie Meadows Racetrack &*

*Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010)."The stringent hostile work environment standard is designed to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language ... and occasional teasing." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 922–23 (8th Cir. 2018) (internal quotations and citations omitted). The plaintiff must show "that the alleged harassment was so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* (internal quotations and citations omitted).

B. Retaliation

Title V of the ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]...." 42 U.S.C.A. § 12203(a). "To establish unlawful retaliation under the ADA, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse action against him, and (3) there was a causal connection between the adverse action and the protected activity. *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999)).

Plaintiff did not check the box for "retaliation" in the charge of discrimination that he filed with the EEOC, nor did he allege retaliation in the narrative portion of the form. He has therefore failed to exhaust his administrative remedies with respect to this claim. *See Russell v. TG Missouri Corp.*, 340 F.3d 735, 747-48 (8th Cir. 2003) ("While [the plaintiff] did check the box for, and allege, a claim of disability discrimination, she cannot rely on that claim to show that she exhausted her administrative remedies with respect to her retaliation claim because it is well established that retaliation claims are not reasonably related to underlying discrimination claims.") (internal quotation and citation omitted). Plaintiff's reporting of workplace harassment in could constitute "protected activity" under the ADA, but it cannot reasonably be inferred that there was a causal connection between that activity and his termination 4 months later. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999) (en banc); *see Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002) ("[T]he interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal

connection could not justify a finding in Ms. Kipp's favor on the matter of causal link."); *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) ("4-week interval between plaintiff's complaint of harassment and her layoff was insufficient to establish showing of causal connection, given that she missed many days of work in the interval and the company was undergoing a period of layoffs).

IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted, and is therefore subject to dismissal on initial review. However, the court on its own motion will give Plaintiff leave to file an Amended Complaint to allege disability discrimination claims as to which Plaintiff has exhausted his administrative remedies. If an Amended Complaint is filed within 30 days, the court will then conduct another initial review pursuant to 28 U.S.C. § 1915(e)(2); otherwise, the case will be dismissed without further notice.

IT IS THEREFORE ORDERED:

1. On the court's own motion, Plaintiff shall have 30 days in which to file an Amended Complaint that states a claim upon which relief may be granted. Failure to file an Amended Complaint within 30 days will result in the court dismissing the case without further notice to Plaintiff.

2. The clerk of the court is directed to set the following pro se case management deadline in each case: June 17, 2019: check for amended complaint.

DATED this 16th day of May, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge